**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| NATIONWIDE REAL ESTATE INVESTMENT, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:13-CV-01040-RWS |
| | : | |
| ATRIUM 5 LIMITED, | : | |
| | : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on Motion for Summary Judgment Filed by Plaintiff Nationwide Real Estate Investment, LLC ("Plaintiff's MSJ") [43], Atrium 5 Limited's Motion for Summary Judgment ("Defendant's MSJ") [44], and Atrium 5 Limited's Motion to Strike Paragraph 8 of Affidavit of Elzie D. Speir, III ("Defendant's Motion to Strike") [52].  After reviewing the record, the Court enters the following Order.

### Background

**I.     Factual Summary**

This case arises out of a dispute over payment on an insurance policy. Except where otherwise indicated, the following facts are undisputed.

Nationwide Real Estate Investment, LLC, ("Nationwide") is a Georgia corporation that buys and sells vacant residential properties. (Statement of Material Facts as to Which There are No Genuine Issues to be Tried in Support of Plaintiff's MSJ ("Pl.'s SOMF"), Dkt. [43-1] ¶¶ 1-2.) Nationwide is owned by Larry Brewer and his wife. (Atrium 5 Ltd.'s Statement of Material Facts for Which There is no Genuine Issue to be Tried ("Def.'s SOMF), Dkt. [44-2] ¶5.)

In or around January 2011, Nationwide obtained insurance coverage from Atrium 5 Limited ("Atrium") for its investment properties under Policy/Certificate Number ATR/R/136686. (Id. ¶16.) That policy was underwritten by Burns & Wilcox on behalf of Atrium, through AUGold, Atrium's proprietary web-based underwriting platform. (Def.'s SOMF, Dkt. [44-2] ¶21.)

On or around March 24, 2011, a Schedule of Locations, which included a vacant dwelling acquired by Nationwide on March 27, 2011 located at 3388 Boulder Park Drive, Atlanta, Georgia 30331 (the "Boulder Park Property"), became part of Policy ATR/R/136686. (Pl.'s SOMF, Dkt. [43-1] ¶¶3, 17.) On April 4, 2011 at 4:19 p.m., Elzie D. "Eddie" Speir III of Associates Group, Inc. Insurance Agency, acting as insurance agent for Nationwide, wrote to Burns &

2

Wilcox via email asking that a renewal Policy/Certificate for Policy ATR/R/136686 be issued effective April 5, 2011 at 12:01 a.m.  (Speir Aff., Dkt. [43-9] ¶8.)  In Mr. Speir's email, he writes: "Issue renewal effective 12:01 AM on 04/05/2011 based on your 02/24/11 proposal.  Confirm issuance by providing a binde [sic] and/or policy number.  Advise if you need any additional information."  (Ex. C to Aff. of Don Malcolm, Dkt. [53-1] at 15.)

On April 5, 2011 at 10:21 a.m., Amanda Snipes of Burns & Wilcox responded via email asking that Mr. Speir complete and submit the Vacant Dwelling Applications on Burns & Wilcox-specific forms.  (Speir Aff., Dkt. [43-9] ¶8.)  In that email, Ms. Snipes writes: "Thank you for your bind request. Please send the following applications so we can release your binder."  (Ex. C to Aff. of Don Malcolm, Dkt. [53-1] at 15.)  Ms. Snipes then lists the properties for which Burns & Wilcox requests an application, including the Boulder Park Property.  (Id.)  The email from Ms. Snipes contains a disclaimer that reads: "IMPORTANT: Please be advised that coverage cannot be considered bound until confirmed by the carrier via written notice.  Thank you!!"  (Id.)

Mr. Speir completed the forms, including the Vacant Dwelling Application [53-1], as requested by Burns & Wilcox and submitted them later

in the day on April 5, 2011.  (Speir Aff., Dkt. [43-9] ¶9.)   On those forms, he

represented that the Property was built in 1999, that the utilities at the Property

were "on," and that the Applicant had never declared personal bankruptcy.

(Defs.' SOMF, Dkt. [44-2] ¶¶11-15; Ex. A to Aff. of Don Malcolm, Dkt. [53-1]

at 10.)  Policy/Certificate No. ATR/R/1444494 (the "Policy")  was issued with a

retroactive effective date of April 5, 2011 at 12:01 a.m.  (Ex. 1 to Am. Compl.,

Dkt. [13-1].)

Also on April 5, 2011, a fire occurred at the Property.  (Defs.' SOMF,

Dkt. [44-2] ¶17; Pl.'s SOMF, Dkt. [43-1] ¶10.)  The fire was called in to the

Atlanta Fire Department at 6:04 a.m.  (Defs.' SOMF, Dkt. [44-2] ¶17.)  The

Atlanta Fire Department arrived at the Property at 6:19 a.m. and cleared the

scene at 7:05 a.m.  (Pl.'s SOMF, Dkt. [43-1] ¶11.)  Atrium, through its

managing agent Burns & Wilcox, assigned insurance adjuster Christopher

Nichols to investigate the cause and origin of the fire.  (Pl.'s SOMF, Dkt. [43-1]

¶22.)  Mr. Nichols determined that the fire caused a total loss to the Property.

(Id. ¶¶22-23.)  Plaintiff claims that the amount of insurance payable under

Georgia's Valued Policy Law, O.C.G.A. §33-32-5, is $100,000 and sought

payment under the Policy.  (Id. ¶25.)

On February 29, 2012, Atrium rescinded the Policy, refunding the policy premium on April 29, 2012.  (Def.'s SOMF, Dkt. [44-2] ¶¶20, 39).  In its letter to Plaintiff rescinding the Policy, Defendant through its counsel enumerated three alleged material misrepresentations that warranted recission under Georgia law: (1) that the Property was built in 1999; (2) that the utilities to the Property were "on"; and (3) that the applicant had never declared personal bankruptcy.  (Ex. 3 to Am. Compl., Dkt. [13-3] at 3.)  Defendant claimed that had it known that the Property had been built in 1950, that Georgia Power had not provided service to the Property since 2009, and that Larry Brewer had declared personal bankruptcy, it would not have issued the Policy.  (Id.)

Plaintiff filed suit against Certain Underwriters at Lloyd's London Subscribing to Certificate Number ATR/R/1444494 on March 29, 2013, seeking a declaratory judgment that its claim resulting from the fire loss at the Property is "a covered loss under the subject policy and that Nationwide is entitled to the recovery of insurance proceeds." (Compl., Dkt. [1] ¶9.)  Plaintiff amended its complaint on August 22, 2013 to name Atrium 5 Limited as the sole Defendant.  (First Am. Compl., Dkt. [13].)  Defendant answered asserting affirmative defenses.  (Atrium 5 Ltd.'s Answer & Aff. Defenses to Pl.'s First

AO 72A
(Rev.8/82)

Am. Compl., Dkt. [15].)  Both parties now move for summary judgment.

Plaintiff seeks a declaration that Atrium owes Nationwide the sum of $100,000

as insurance proceeds to indemnify Nationwide for the fire loss suffered on the

Property.  (Pl.'s MSJ, Dkt. [43] at 3.)  Defendant seeks summary judgment on

grounds that it owes no duty to Plaintiff because it properly rescinded the Policy

based on the misrepresentations in Plaintiff's application.  (Def.'s MSJ, Dkt.

[44] at 1.)

## II.     The Parties' Arguments

Plaintiff raises, among other arguments, the following in support of its

motion for summary judgment on its claim for proceeds under the Policy.  First

and foremost, Plaintiff argues that the Policy was bound as of 12:01 a.m. on

April 5, 2011.  (Pl.'s MSJ, Dkt. [43] ¶5.)  Thus, Plaintiff contends, because the

Policy was in effect prior to its submission of the additional information in the

Vacant Dwelling Applications to Burns & Wilcox, Defendant could not have

relied on Plaintiff's representations on those forms.  (Id.)  In further support of

this argument, Plaintiff points out that the Policy (No. ATR/R/144494) was a

renewal of an earlier policy (No. ATR/R/136686) and as such, Defendant had

already assumed the risk.  (Id. ¶3.)

6

Second, Plaintiff argues that even if the policy was not bound until after Burns & Wilcox received the Vacant Dwelling Application, Defendant's defense of misrepresentation must fail because "either the misrepresentations of fact were not misrepresentations at all, but if there were any misrepresentations, they were not 'material' under O.C.G.A. §33-24-7(b)." (Pl.'s Br. in Opp'n to Def.'s MSJ, Dkt. [50] at 3.) Specifically, Plaintiff contends that the improvements to the Property completed in 2011 would have led Burns & Wilcox to accept the risk even though the Property was constructed in approximately 1950. Plaintiff also argues that Nationwide, not Mr. Brewer, was the relevant applicant for purposes of reporting earlier bankruptcies. Moreover, Plaintiff contends that the utilities to the Property simply needed to be "turned on" by the utility companies. (Dkt. [50] at 13.)

Defendant contends, on the other hand, that the insurance application contained several misrepresentations, rendering the Policy void ab initio and entitling Defendants to rescission under O.C.G.A. §33-24-7(b). (See generally Def.'s MSJ Br., Dkt. [44-1]; Def.'s Resp. in Opp'n to Pl.'s MSJ, Dkt. [53].) To this end, Defendant argues that it relied on the Vacant Dwelling Application submitted by Plaintiff on the afternoon of April 5, 2011 and that the Policy was

7

only retroactively bound to be effective as of 12:01 a.m. on April 5.  (Def.'s

Reply Br. in Supp. of Def.'s MSJ, Dkt. [55] at 3.)  Further, Defendant argues

that even though the Policy renewed an earlier policy, Defendant had not

previously accepted the risk because the Property at issue was added to the

earlier policy by endorsement.  (Id.)  Accordingly, Defendant argues, the Policy

was issued based on the following misrepresentations made in the Vacant

Dwelling Application as of April 5, 2011: "Year Built: 1999;" "9. Are Utilities

On or Off? ON;" "12. Applicant Ever Declared Personal Bankruptcy? NO."

(Ex. A to Def.'s Resp. in Opp'n to Pl.'s MSJ, Dkt. [53-1].)  On the basis of

these purported misrepresentations, Defendant claims the Policy is subject to

rescission, and thus seeks judgment as a matter of law on Plaintiff's claims.


## Discussion

## I.      Atrium 5 Limited's Motion to Strike Paragraph 8 of Affidavit of Elzie D. Speir, III [52]

As an initial matter, Defendant moves to strike Paragraph 8 of the

Affidavit of Elzie D. Speir, III in Support of Plaintiff's Motion for Summary

Judgment (the "Speir Affadavit") [43-9] pursuant to Federal Rule of Civil

Procedure 56(c).  (Def.'s Mot. to Strike, Dkt. [52] at 3.)  Defendant argues that

Mr. Speir lacks personal knowledge of the subject matter in Paragraph 8, and

instead impermissibly grounds his affidavit in "speculation and supposition."

(Id. at 2.)  Defendant particularly objects to the language: "This communication

indicated to me that per my April 4, 2011 request, the policy had been bound as

of 12:01 a.m. on April 5, 2011, but the formality of completion and submission

of the Burns & Wilcox forms were needed for the formal binder to be

'released.'"  (Id. at 3.)

Plaintiffs respond that Defendant is itself simply speculating as to Mr.

Speir's own knowledge and offers another affidavit by Mr. Speir clarifying his

interpretation of Ms. Snipe's April 5, 2011 email.  (Dkt. [56-1] ¶¶4-5.)

Defendants argue that Plaintiff impermissibly characterizes Mr. Speir's

"interpretation" as a "fact" for summary judgment purposes.  The Court agrees.

Rule 12(f) states that a court "may strike from a pleading an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter. . . ."

Generally, however, "[a]n affidavit is not a pleading subject to a motion to

strike."  Argonaut Midwest Ins. Co. v. McNeilus Truck and Mfg., Inc., No.

1:11-CV-3495-TWT, 2013 WL 489141, at *1 (N.D. Ga. Feb. 8, 2013); see also

Southard v. State Farm Fire and Cas. Co., No. 4:11-CV-243, 2013 WL 209224, at *7 (S.D. Ga. Jan. 17, 2013) ("[A] motion to strike is not the proper procedural vehicle to challenge affidavits.  Affidavits are not pleadings.") (internal citations omitted).

To the extent Defendant's motion raises evidentiary objections to Plaintiff's submissions, "[r]ather than striking a document or a portion thereof, it is usually more appropriate to consider a party's objections to affidavits which are filed in support of a motion for summary judgment when ruling on the merits of a motion for summary judgment." Haynes v. Twin Cedars Youth and Family Servs., No. 5:10-CV-321 (CAR), 2012 WL 895699, at *5 (M.D. Ga. Mar. 15, 2012).  When addressing the merits of a motion for summary judgment, "a court may strike *or* disregard the improper portions of an affidavit submitted in connection with a motion for summary judgment, and consider the remainder of the testimony or statement."  Id. at *7 (citing Lee v. Nat'l Life Assurance Co. of Canada, 632 F.2d 524, 529 (5th Cir. 1980)[1]).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

10

Rather than strike the contested material, the Court will exercise its discretion and disregard any improper testimony when it considers the merits of Plaintiff's Motion for Summary Judgment.  Accordingly, Defendant's Motion to Strike is **DENIED**.  The Court now turns to the merits of the parties' motions for summary judgment.

## II.   The Parties' Motions for Summary Judgment [43], [44]

### A.   Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and

11

present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

12

its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist.  Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."  Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

B.     Analysis

1.     *Reliance on the Vacant Dwelling Application*

The Court first considers whether Defendant could have relied on the Vacant Dwelling Application submitted by Plaintiff on April 5, 2011, because the alleged misrepresentations therein can only provide a basis for Defendant's rescission of the Policy if Defendant relied on that submission.  Plaintiff moves for summary judgment on grounds that Defendant could not have considered the information submitted in the Vacant Dwelling Application.

Plaintiff first argues that Defendant could not have relied on the Vacant Dwelling Application because Mr. Speir requested on April 4, 2011 that the

13

Policy be bound as of 12:01 a.m April 5, 2011.  Because the Policy was bound prior to receipt of the Vacant Dwelling Application, argues Plaintiff, receiving the information had no effect on Burns & Wilcox's issuance of the Policy.  The Court, however, disagrees with Plaintiff that the Policy was bound before Burns & Wilcox received the Vacant Dwelling Application.

First, the email sent by Plaintiff's own agent belies Plaintiff's argument.  Mr. Speir writes on April 4: "Issue renewal effective 12:01 AM on 04/05/2011 based on your 02/24/11 proposal.  Confirm issuance by providing a binde [sic] and/or policy number.  Advise if you need any additional information."  (Ex. C to Third Aff. of Don Malcolm, Dkt. [53-1] at 15.)  Mr. Speir's email requested a binder and/or policy number as confirmation.  Burns & Wilcox did not issue a policy number until *after* it received the Vacant Dwelling Application.  (Third Aff. of Donald Malcolm, Dkt. [53-1] ¶9.)

Moreover, Mr. Speir's email defeats Plaintiff's argument that Burns & Wilcox had already assumed the risk of insuring the Property because the Policy was simply a renewal of an earlier issued policy.  Here, Mr. Speir's email explicitly directs renewal based on the February 24, 2011 proposal.  (Ex. C to Third Aff. of Donald Malcolm, Dkt. [53-1] at 15-17.)  The Property was

14

not added to the earlier policy by endorsement until March 24, 2011.  Finally, Mr. Speir's own email anticipates that Burns & Wilcox may have required additional information before releasing the binder.

As such, the Court cannot conclude that the Policy was bound prior to Burns & Wilcox's receipt of the Vacant Dwelling Application.  Plaintiff's Motion for Summary Judgment, to the extent that it asks the Court to find that "[r]enewal coverage on the Boulder Park property was bound effective 12:01 a.m. on April 5, 2011" is **DENIED**.

2.     *Rescission of the Policy*

The Court's denial of Plaintiff's Motion for Summary Judgment does not command the Court to grant Defendant's, because even if the Policy did not issue on April 5, 2011 at 12:01 a.m.,  Burns & Wilcox later issued the Policy *to be effective* April 5, 2011 at 12:01 a.m.  Backdated policies are not presumptively invalid.  Georgia Cas. & Sur. Co. v. Almon, 122 Ga. App. 42, 43, 176 S.E.2d 205, 206 (1970) ("As a general rule parties may agree that a policy be antedated, in which case it takes effect on the date so agrees.").  The Court now turns to Defendant's rescission of the Policy.

Defendant seeks a determination that it legally rescinded the Policy and moves for summary judgment in its favor, arguing that Plaintiff can make no claim under the Policy if the Policy was void ab initio.  As discussed above, Defendant moves for summary judgment on grounds that Plaintiff made three separate material misrepresentations in its application.  Plaintiff argues that its applications contained no misrepresentations, and even if they did, that any misrepresentations were not "material" under the meaning of O.C.G.A. §33-24-7(b).  (Pl.'s Legal Br. in Opp'n to Def.'s MSJ ("Pl.'s Opp'n Br."), Dkt. [50] at 3.)

> Under Georgia law,
>
> Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
>
>> (1) Fraudulent;
>>
>> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>>
>> (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had

16

> been known to the insurer as required either by the
> application for the policy or contract or otherwise.

O.C.G.A. § 33-24-7(b).

Plaintiff stresses that the statements in the Vacant Dwelling Application were truthful based on Mr. Speir's knowledge at the time and his understanding of the questions posed on the application. Neither party argues that these statements evidence any intent to deceive Defendant. As for Plaintiff's intent, even if Plaintiff had no intention of defrauding Defendant, "it is immaterial whether the applicant acted in good faith in completing the application" for the purposes of rescission under O.C.G.A. § 33-24-7(b). Taylor v. Ga. Int'l Life Ins. Co., 427 S.E.2d 833, 834 (Ga. Ct. App. 1993). The Court accordingly analyzes rescission under subparagraphs (b)(2) and (b)(3) of the statute.

To show that an insured made a misrepresentation or omission that is material to the acceptance of risk under subparagraph (b)(2), the party seeking rescission must satisfy an objective standard by showing that the misrepresentation is "one that would influence a *prudent insurer* in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance." Am. Gen. Life Ins. Co. v. Schoenthal Family,

17

LLC, 555 F.3d 1331, 1340 (11th Cir. 2009) (emphasis in original) (quoting

Lively v. S. Heritage Ins. Co., 568 S.E.2d 98, 100 (Ga. Ct. App. 2002)) (internal

quotation marks omitted).  "Ordinarily it is a jury question as to whether a

misrepresentation is material, but where the evidence excludes every reasonable

inference except that it was material, it is a question of law for the court."

Perkins v. Am. Int'l Specialty Lines Ins. Co., 486 B.R. 212, 218 (N.D. Ga.

2012) (quoting Taylor, 427 S.E.2d at 834) (internal quotation marks omitted).

  As the party alleging misrepresentation and the right to rescind, Atrium

bears the burden of proving its affirmative defense to coverage.  Exec. Risk

Indem., Inc. v. AFC Enters., Inc., 510 F. Supp. 2d 1308, 1324 (N.D. Ga. 2007)

aff'd, 279 F. App'x 793 (11th Cir. 2008) (citing Reserve Life Ins. Co. v. Ayers,

121 S.E.2d 649, 654 (Ga. 1961) ("This court has repeatedly held that the burden

was upon the insurer to prove an affirmative defense, such as fraud on the part

of the insured in obtaining the policy, or that a loss apparently covered by the

policy came within an exclusionary clause contained in the policy.")).

Defendant "need not prove that [Plaintiff] acted with intent or even knowledge"

in misrepresenting the property's age, state of the utilities, or applicant's

bankruptcy in order to prevail under O.C.G.A. §33-24-7(b)(2) or (3).  Nappier

v. Allstate Ins. Co., 766 F. Supp. 1166, 1168 (N.D. Ga. 1991) (citing United

Family Life Ins. Co. v. Shirley, 248 S.E.2d 635, 637 (Ga. 1978)).       The

Court will now consider each of the three alleged misrepresentations in turn.

As an initial matter, the Court will consider whether the statements made by

Plaintiff on the Vacant Dwelling Applications constitute misrepresentations

such that O.C.G.A. §33-24-7(b) applies.  As is proper on a motion for summary

judgment, the Court views these statements in the light most favorable to the

non-moving party.

       The Court will then consider whether the misrepresentation was material

such to warrant rescission.  As a general rule, "an insurer cannot assert that

something is material unless it has either made inquiry about or apprised its

prospective insured of the need for proper disclosure of the information in

question."  Perkins v. Am. Int'l Specialty Lines Ins. Co., 486 B.R. 212, 219

(N.D. Ga. 2012) (citing Executive Risk Indemnity, Inc. v. AFC Enters., Inc.,

510 F. Supp. 2d 1308, 1330 (N.D.Ga. 2007); Georgia Farm Bureau Mut. Ins.

Co. v. First Fed. Sav. & Loan Ass'n, 262 S.E.2d 147 (Ga. App. 1979); Block v.

Voyager Life Ins. Co., 303 S.E.2d 742 (Ga. 1983)).  Here, Defendant satisfies

this initial criterion for all three statements because the alleged

misrepresentations were made in direct response to questions asked by Defendant.

The Court will finally consider whether the misrepresentation was "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." O.C.G.A. §33-24-7(b)(2). "In addition to proving that the statement was objectively false, plaintiff must also prove that the statement was material because it changed the nature, extent, or character of the risk." Home Indem. Co. Manchester, New Hampshire v. Toombs, 910 F.Supp. 1569, 1575 (N.D. Ga. 1995) (quoting Nappier, 766 F.Supp. at 1168). "A material misrepresentation is one that would influence a prudent insurer in deciding whether to assume the risk of providing coverage." Id. (internal citations omitted).

Defendant contends that rescission was proper based on any of the following three alleged misrepresentations, each of which the Court now addresses in turn.

a.    Age of the Property

First, the parties agree that the Property was not built in 1999; rather, the Property was built in approximately 1950. (See Resp. of Nationwide Real

20

Estate Inv., LLC to Def. Atrium 5 Ltd.'s Statement of Undisputed Material

Facts in Opp'n to Atrium's Mot. for Summ. J.  ("Pl.'s Resp. to Def.'s SOMF"),

Dkt. [50-1] ¶24.)  The parties do not dispute that Plaintiff represented the

Property was built in 1999.[2]

Defendant claims that "the representation that the Property was built in

1999 was material to the acceptance of the risk, as it allowed coverage to be

written on a broader form than would have been available to Nationwide had

the true age of the Property been disclosed."  (Def.'s MSJ Br., Dkt. [44-1] at

12.)  In support, Defendant offers the deposition testimony of Don Malcolm,

who testified that the AUGold underwriting system would reject a property

older than 51 years old.  (See Donald Malcolm Depo., Dkt. [47-3] at 70:1-4.)

Plaintiff concedes that the Property was built in 1999 and that the

Property's true date of construction, approximately 1950, would have precluded

coverage as underwritten.  But Plaintiff counters that because Nationwide

indicated that updates to the Property had been made in 2011, coverage could

---

[2]  Plaintiff offers an explanation for this misrepresentation based on property
tax records, (Speir Aff., Dkt. [43-9] ¶ 10), but Plaintiff's knowledge of the
misrepresentation is irrelevant under O.C.G.A. §33-24-7(b)(2) and (3).  Nappier, 766
F.Supp. at 1168.

have been written on the broader form.  In support of this contention, Plaintiff points to other properties built over 51 years ago that had been updated in 2011 and that were accepted by the AUGold software system for underwriting.  (Id. at 70:1-72:20.)  Plaintiff, however, provides no evidence that the updates were in fact performed.  Defendant suggests that systematic upgrades were not performed, but simply smaller scale repair work.  (Dkt. [55] at 8-9.)

Because the relevant facts are in dispute, the Court cannot conclude that Defendant would not have accepted the risk based on the updates purportedly made in 2011.  As such, Defendant's Motion for Summary Judgment is **DENIED** to the extent it relies on a material misrepresentation of the Property's age.

### b.    Applicant's bankruptcy

Second, the parties do not dispute that Larry Brewer has previously declared personal bankruptcy.  Nor do the parties dispute that Eddie Speir as agent for Mr. Brewer submitted the Vacant Dwelling Application bearing a signature of "Larry Brewer."  (Def.'s SOMF, Dkt. [44-2] ¶31; Speir Aff., Dkt. [43-9] ¶¶2, 9.)  The parties do, however, dispute what was meant by the term "applicant."  Defendant referred to Mr. Brewer as the applicant in its letter

22

rescinding the Policy.  (Ex. 4 to Pl.'s MSJ, Dkt. [43-8] at 3.)  Plaintiff claims

that the applicant is instead "Nationwide Real Estate Investment, LLC," based

on the application forms submitted to Atrium for the issuance of the Policy.

(Pl.'s Br. in Opp'n to Def.'s MSJ, Dkt. [50] at 16.)  On the Vacant Dwelling

Application, Mr. Speir provided "Nationwide Real Estate Investment, LLC" in

response to "Applicant's Name," but signed Mr. Brewer's name in response to

"Applicant's Signature."  (Dkt. [53-1].)  Defendant claims that if Burns &

Wilcox had known of Mr. Brewer's previously declared bankruptcy, it would

not have issued the Policy. ( Def.'s Reply Br. in Supp. of Def.'s MSJ, Dkt. [55]

at 9; Third Aff. of Don Malcolm, Dkt. [53-1] ¶¶19-20.)  Plaintiff argues that,

because Nationwide and not Mr. Brewer was the applicant, Defendants rely on

an improper basis for rescission.

 The Court finds that Defendant has not carried its burden to show that

Burns & Wilcox would not have issued the Policy to Nationwide the entity had

it known of Mr. Brewer's personal bankruptcy.  While Defendant argues that as

an entity Nationwide could not have declared personal bankruptcy, the Court

cannot conclude as a matter of law that question 12 on the Vacant Dwelling

Application referred to Mr. Brewer as the "applicant."  Additionally, Defendant

23

offers nothing more than unsupported assertions by Mr. Malcolm to show that

Burns & Wilcox would not have underwritten the Policy had it known that Mr.

Brewer had previously declared bankruptcy.  (<u>See</u> Second Aff. of Don

Malcolm, Dkt. [44-8] ¶14.)   Accordingly, Defendant's Motion for Summary

Judgment is **DENIED** to the extent it relies on a material misrepresentation of

the applicant's bankruptcy history.

> c.      Utilities at the Property

Finally, Defendant claims that rescission of the Policy was proper based

on Plaintiff's representation that the utilities at the Property were "on" in

response to question 9 on the Vacant Dwelling Application.  (Def.'s MSJ Br.,

Dkt. [44-1] at 8.)  The parties disagree about the meaning of "on."  Defendant

claims that the utilities were not "on" because "[t]here had been no electrical

service to the Property since 2009," and thus argues that Plaintiff's response

constitutes a misrepresentation.  (<u>Id.</u> at 7; Ex. E to Def.'s MSJ, Dkt. [44-7] at 4.)

Defendant claims that if Burns & Wilcox "had known there was no power

service to the Property, it would not have underwritten the Policy on behalf of

Atrium, unless it was confirmed that the water service to the Property was also

disabled." (<u>Id.</u> at 8.)  Plaintiff, however, claims that the Property was wired for

24

electricity, meaning that the wiring was in working order and that electrical power was available to the house and only needed to be "turned on" by the power company to be fully functional. (Pl.'s Br. in Opp'n to Def.'s MSJ, Dkt. [50] at 13.) At bottom, Plaintiff claims that the wording of question 9 was ambiguous.

The Court declines to read ambiguity into the Vacant Dwelling Application. The ordinary meaning of the word "on"–especially read in light of Plaintiff's argument that the utilities needed only to be "turned on"– leads the Court to conclude that the utilities were not "on" as contemplated by the Vacant Dwelling Application. Accordingly, regardless of Plaintiff's understanding of question 9, its response "On" is a misrepresentation.

But the Court cannot conclude as a matter of law that this misrepresentation was material such to allow Defendant to rescind the Policy. Defendant again simply offers bald assertions that Burns & Wilcox would not have underwritten the Policy if it had known that the utilities were not turned on.[3] Accordingly, Defendant's Motion for Summary Judgment is **DENIED** to

---

[3] Defendant further states that it would not have underwritten the Policy unless it confirmed that the water was off. (Dkt. [55] at 12.) Defendant also, however, seems to argue that the water being on was important to ensure that "small fires" could

the extent it relies on a material misrepresentation of the state of the utilities at the Property.

## Conclusion

For the foregoing reasons, the Court cannot conclude that the Policy was bound on April 5, 2011 at 12:01 a.m and finds that Plaintiff made misrepresentations in its Vacant Dwelling Application.  Accordingly, Plaintiff's Motion for Summary Judgment [43] is **DENIED**.

However, Defendant is not entitled to summary judgment that rescission is proper under O.C.G.A. §33-24-7(b), because it failed to show that any misrepresentation was material to Defendant's acceptance of the risk.  As such, Defendant's Motion for Summary Judgment [44] is also **DENIED**.  Finally, Defendant's Motion to Strike Paragraph of Affidavit of Elzie D. Speir [52] is **DENIED**.

The parties shall submit a proposed consolidated pretrial order within 30 days of the entry of this Order.

_____

be put out at the Property.  (Id. at 12, n.4.)  The Court finds that these inconsistencies further support its conclusion to deny summary judgment on the materiality of Plaintiff's misrepresentation about the utilities.

**SO ORDERED**, this  8th  day of January, 2015.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)